# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: ALTHEIMER & GRAY, ) | |
| ) | |
| Debtor. ) | |
| ) | 08 C 4999 |
| ) | |
| MARK H. BERENS, ) | Hon. Charles R. Norgle |
| ) | |
| Appellant, ) | On Appeal from the United States |
| ) | Bankruptcy Court for the Northern |
| v. ) | District of Illinois |
| ) | |
| DEVELOPMENT SPECIALISTS, INC., as ) | Bankruptcy Case 03 B 43547 |
| creditor trustee for the ALTHEIMER & GRAY ) | |
| CREDITOR TRUST, ) | |
| ) | |
| Appellee. ) | |

## MEMORANDUM OPINION

CHARLES R. NORGLE, District Judge

Before the Court is the bankruptcy appeal of Mark H. Berens ("Berens"). Berens challenges the United States Bankruptcy Court for the Northern District of Illinois' denial of his Motion for Payment of His Allowed Claims (the "Motion"). In the Motion, Berens alleged claims against the Debtor Altheimer & Gray ("Altheimer" or the "Firm") in the amount of $311,708.62, as described in his March 30, 2004 Proof of Claim. For the following reasons, the decision of the Bankruptcy Court is affirmed.

1

# I. BACKGROUND

## A. Facts

Prior to March 5, 1999, Berens was an equity partner with Altheimer. On May 5, 1999 Berens entered into an Employment Agreement (the "Agreement") with Altheimer for the fiscal years 1999 – 2001. The Agreement provides, in its entirety:

**EMPLOYMENT AGREEMENT – CONTRACT PARTNER**

Mark Berens (Partner) and Altheimer & Gray (the "Firm") agree that Partner will be employed as a contract partner of the Firm for its 1999, 2000, and 2001 Fiscal Years on the following terms:

1. Partner shall, subject to Exhibit A, ¶ 1, continue to devote all of his professional efforts to the practice of law on behalf of the Firm and its clients and shall continue to be a partner of the Firm.

2. The Firm shall pay Partner annual base compensation of $250,000. If this Agreement is terminated prior to the end of a Fiscal Year, Partner's base compensation for that year shall be pro-rated to the period of time it was in effect. Partner shall also be eligible for a bonus at the end of each Fiscal Year, to be determined in the sole discretion of the Firm's Steering Committee if the expectations set forth in Exhibit A, ¶ 3 are exceeded. Partner shall be covered under the Firm's professional liability insurance at the Firm's cost. Partner shall also be entitled to participate, at his election, in the Firm's health, life and disability insurance plans, to the extent eligible with the cost of such insurance to be deducted from his base compensation, and to continue to participate in the Firm's 401-K profit-sharing plan. Partner shall not be required to contribute further capital to the Firm, directly or through holdbacks. Any capital previously contributed by Partner will be returned after the Fiscal Year 1999. Partner may or may not be given units.

3. Partner shall have no rights under the Firm's Partnership Agreement, including, without limitation, those provisions governing Withdrawal, Expulsion, Death, Retirement and Disability. Partner has no interest in the profits, inventory, or any other assets of the Firm and has no personal liability for any obligations of the Firm.

4. This Agreement shall terminate on October 31, 2001. It may be terminated sooner by Partner for any reason, effective 90 days after written notice to the Firm, and by the Firm (by a majority vote of its Steering Committee), effective 90 days after written notice to Partner, if Partner's annual production is, or is reasonably projected to be, substantially less than the expected levels set forth in Exhibit A, ¶ 3.

5. If no notice of termination is given, the parties shall meet during the

> Summer of 2001 for the purpose of determining whether to agree to renew this Agreement and, if so, on what terms.
>
> 6. The parties shall also be bound by the terms set forth on Exhibit A hereto.
>
> **EXHIBIT A – BERENS**
>
> 1. Partner may continue to devote time to the performance of insurance consulting services on the same conditions as set forth in the parties' original agreement.
>
> 2. The Firm will continue to employ Mary Jo Rice on the same conditions as set forth in the parties' original agreement, provided that any increase in her base compensation shall be at the cost of the Firm to the extent of any increase in the Bureau of Labor Statistical Consumer Cost of Living Index, and any excess by Partner.
>
> 3. Partner is expected to bill over 1,000 hours/year and to achieve collections of $1 Million realization of close to 100% on the clients for whom he is responsible. This calculation shall include his time billed by other parties.

Ex. 1, Br. of Mark H. Berens. The Agreement is signed by Berens and Kenneth R. Gaines, an Altheimer Managing Partner. Id.

In July 2003, the Firm closed its offices and began to liquidate its assets. In October 2003, four of Altheimer's creditors filed an involuntary bankruptcy petition under Chapter 7 of the Bankruptcy Code. At the time of the bankruptcy filing, Berens remained a contract partner with Altheimer. On April 6, 2005, the Bankruptcy Court confirmed the Fourth Amended Joint Plan of Liquidation of Altheimer & Gray (the "Plan"). The Plan established a Creditor Trust funded by a "Non-Bank Unsecured Creditor Fund," which was funded in turn by contributions from Altheimer's partners. Plan, ¶¶ 1.73, 5.1. The Plan gave the Creditor Trust the responsibility of making distributions on certain classes of claims, and the right to object to those claims. Id., ¶¶ 5.3(b), 5.8(b), and 5.20(a). Under the Plan, however, the claims of Altheimer's partners were not among those the Creditor Trust could pay or object to. Id.

More importantly, the Plan also provided that "[n]o holder of a Partner Claim shall be entitled to any Distribution under the Plan or from the Non-Bank Unsecured Creditor Fund and

each Partner shall be deemed to have abandoned any Interest in the Debtor other than the contingent right to receive an Estate Surplus." Id. at ¶ 4.11. The Plan defined "Partner Claims" as "any and all Claims of [Altheimer's] partners, including without limitation, any Claims for contribution, indemnification, payment of capital contributions, [and] reimbursement of expenses . . ." Id. at ¶ 1.85. The Plan defined the term "Partner" as encompassing both "Unit Partners" (who received shares or "Units" of Altheimer's profits) and "Non-Unit Partners" (who did not receive "Units"). Id. at ¶ 1.84. The upshot of this language is uncomplicated and undisputed – barring an Estate Surplus, Altheimer's Partners were not entitled to distributions under the Plan. No Estate Surplus occurred.

## B. Procedural History

Berens filed Proof of Claim No. 157 (the "Claim") in the United States Bankruptcy Court for the Northern District of Illinois on March 30, 2004. In the Claim, Berens refers to himself as a "Contract Partner and a Non-Unit Partner." He asserted that he was owed (1) $73,300 for unreturned capital contributions, (2) $154,000 in unpaid compensation under the Agreement, (3) $75,160 for distributions wrongfully withheld by Altheimer, and (4) $9,248.62 for unreimbursed business expenses, for a total of $311,708.62. Berens Summary of Claims, at 1. Following the confirmation of the Plan, the Firm did not pay or object to Berens' Claim because, under the Plan, his Claim and the Claims of other Altheimer Partners would not be paid. The Trustee of the Creditor Trust also did not pay or object to Berens' Claim as his Claim was not one of those specific types of Claims the Trustee was authorized to pay or object to. In essence, Altheimer and the Trustee seem to have simply ignored Berens' Claim because it was not authorized under the Plan.

4

On April 22, 2008, over three years after the Plan was confirmed, Berens filed the Motion, seeking to compel payment of his Claim by the Creditor Trust. In the Motion, Berens asserted that he should have been treated as a general unsecured creditor (and therefore eligible for payment by the Creditor Trust) rather than a Partner. The Trustee opposed the motion, asserting that Berens was a Partner, and therefore entitled to nothing under the Plan. The Bankruptcy Court denied the Motion, issuing its ruling from the bench on July 10, 2008.

The Bankruptcy Court first summarized its findings.

> [T]he bottom line is the plan controls as to who's a partner. The plan says there's two kinds of partners in the world for purposes of this plan. There's partners who are unit partners and those are people who did get units under the partnership agreement. And then there's every other partner out there who doesn't get units under the partnership agreement. This person is a contract partner under the plan. [Berens] falls into the definition of a non-unit partner because he doesn't have units under the partnership agreement. And that's sort of the end of the story. Once you're any kind of partner, you get nothing under this plan the way its turned out because there's not enough assets to go to any partner.

Tr. of Proceedings before the Honorable Carol A. Doyle, at 3-4. The Bankruptcy Court then went on to read its Opinion into the record. The following are key excerpts from that Opinion.

> Berens was an equity or . . . "unit" . . . partner of the debtor until May 1999 . . . . He then entered into an employment agreement with the debtor . . . under which he was . . . "employed as a contract partner of the firm for its 1999, 2000 and 2001 fiscal years . . . ."
> The court confirmed a plan in April 2005. The plan established a creditor trust funded by voluntary contributions from the debtor's partners in exchange for a release of all claims against them individually . . . Under the plan, there will be no distribution to claimants in classes 9, which are investor claims, or 11,which are partner claims, unless all non-partners are paid in full. This has not occurred, so no partner will receive any distribution under the plan.
> Berens now seeks to compel the creditor trustee to pay his claim. He argues that he was neither a unit partner nor a non-unit partner because he had no rights under the debtor's partnership agreement so that the plan provision relating to . . . "partners" . . . do[es] not apply to him . . . Berens' argument fails, however, because he was a partner of the debtor and partners are not entitled to a distribution under the plan . . .

5

Article IV of the plan provides for the treatment of classes of claims. Paragraph 4.11 provides for the treatment of Class 11, partner claims, as follows: "No holder of a Partner Claim . . . shall be entitled to any distribution under the plan . . . other than the contingent right to receive an estate surplus . . ." Thus, unless all other creditors are paid in full and there is a surplus, partners will receive nothing under the plan. Paragraph 4.9 provides for the treatment of Class 9, investor claims. It similarly provides that . . . "investor claims" . . . shall not be entitled to any distribution under the plan. Investor claims are claims by partners or former partners, who, like Berens, invested in two of the firm's partnerships . . . . Thus the key question is whether Berens is a partner for the purposes of the plan. If he is, he gets no distribution, period . . .

Paragraph 1.84 of the plan provides that . . . "'partner' means solely for the purposes of this plan, a unit partner or a non-unit partner." . . . "Unit partner" . . . is defined as . . ."a partner at any point between June 30th, 2001, and the petition date who was assigned units from time to time pursuant to the Article III of the partnership agreement" . . . Plan Paragraph 1.121. [A] "non-unit partner" . . . is defined as . . . "a partner of the debtor at any point between June 30th, 2001, and the petition date who was not a unit partner and was not assigned units in the profits and losses of the debtor pursuant to the partnership agreement." . . . Plan Paragraph 1.74, Section 3.

The only question that must be decided in this motion is whether Berens was a partner for purposes of the plan. Berens was a unit partner of the debtor pursuant to the partnership agreement until 1999. At that time he entered into an agreement entitled . . . "Employment Agreement – Contract Partner." . . . The employment agreement provides that Berens, who is referred to in the agreement as . . . "partner," . . . "shall continue to be a partner of the firm." . . . Paragraph 2 of the agreement provides for a fixed annual base compensation with eligibility for a bonus at the end of the year . . . It also provides that . . . "partner may or may not be given units." . . . Paragraph 3 of the agreement then provides that . . . "partner shall have no rights under the firm's partnership agreement." . . . Finally, under the agreement Berens was not required to contribute further capital to the debtor, and his capital contribution was to be returned at the end of fiscal year 1999. Based on this employment agreement, Berens falls squarely within the definition of non-unit partner under the plan . . . [H]e has no rights to a distribution in this case.

Id. at 5-14.

Berens filed his appeal in the Northern District on September 3, 2008. The appeal is fully briefed and ripe for ruling.

6

## II. DISCUSSION

### A. Standard of Review

District courts have jurisdiction to review decisions of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). When adjudicating bankruptcy appeals, district courts are to apply a dual standard of review: the Bankruptcy Court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed *de novo*. In re Midway Airlines, 383 F.3d 663, 668 (7th Cir. 2004); In re Smith, 286 F.3d 461, 464-65 (7th Cir. 2002); In re Vita Corp., 380 B.R. 525, 526 (C.D. Ill. 2008).

### B. The District Court's Review

The Court understands the Bankruptcy Court's Opinion to make a conclusion of law that it is the language of the Plan that controls the question of whether Berens was a Partner of Altheimer, and a finding of fact that Berens is a Partner of the Firm under the Plan. As the Court will explain, the Bankruptcy Court did not err in reaching either this conclusion or finding.

Under section 1123 of the Bankruptcy Code, Altheimer was authorized to define and classify the claims filed against it under the Plan. See 11 U.S.C. § 1123(a)(1), (3). Berens was free to object to the Plan at the confirmation hearing, but he neither objected to the Plan nor appealed the Bankruptcy Court's Confirmation Order. Once the Bankruptcy Court confirmed the Plan, Berens became bound by it under well-established statutory and case law. See 11 U.S.C. § 1141(a); In re Chi., Milwaukee, St. Paul & Pac. R.R. Co., 891 F.2d 159, 161 (7th Cir. 1989) ("When the order of conformation is entered, it binds the debtor and all creditors to the terms of the plan of reorganization."); In re NTG Indus., Inc., 118 B.R. 606, 610 (Bankr. N.D. Ill. 1990) ("A confirmed plan is *res judicata* concerning issues and claims arising thereunder and

7

establishes a necessary finality by the order of confirmation to the terms of the plan, which binds the debtor, the creditors and the equity interests."); In re Doty, 129 B.R. 571, 580 (Bankr. N.D. Ind. 1991) (citing numerous cases for the proposition that "[o]nce a plan is confirmed neither the debtor nor a creditor can assert rights that are inconsistent with its provisions."). The Bankruptcy Court therefore correctly determined that the terms of the Plan control the question of whether Berens is a Partner of Altheimer.

As the Court has noted, the Plan provides that Altheimer Partners are either "Unit" (receiving shares or "Units" of the Firm's profits) or "Non-Unit" (not receiving shares or "Units") Partners. Berens was a Unit Partner until May 1999, when he signed the Agreement. At that point, as the Bankruptcy Court properly found, he became a Non-Unit Partner. The Agreement refers to Berens as "Partner" in numerous places, but provides, *inter alia*, that Berens is to receive a fixed salary, has no rights under the Firm's partnership agreement, has no personal liability for the Firm's debts, and is not required to contribute further capital to Altheimer. Based on that Agreement, there is no question that Berens is a Non-Unit Partner for the purposes of the Plan.

This Court can find no error in the Bankruptcy Court's conclusion of law or finding of fact. See In re Midway Airlines, 383 F.3d at 668. As a Partner, Berens was clearly not entitled to receive any distribution under the Plan unless an Estate Surplus existed. Plan, ¶ 4.11. The Bankruptcy Court therefore properly denied the Motion, and this Court affirms that ruling.

### III. CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court is affirmed.

ENTER:

*[signature]*

Dated: August 21, 2009

Charles R. Norgle, District Judge